CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
FELIPE REYES MARTIN, JOSE ISABEL
REYES, EDGAR OSVALDO VASQUEZ
COLOP, and INOCENTE FRANCISCO
GUINEA GARCIA,
*individually and on behalf of others similarly*
*situated,*

                                        **COMPLAINT**

                                        **COLLECTIVE ACTION UNDER**
                                        **29 U.S.C. § 216(b)**

                    *Plaintiffs*,

            -against-                   **ECF Case**

212 ONE WAY CONSTRUCTION LLC
(D/B/A ONE WAY CONSTRUCTION LLC),
WAY ONE CONSTRUCTION LLC (D/B/A
ONE WAY CONSTRUCTION LLC),
ARGETIM KERKUTI A/K/A CHARLIE, and
BEKIM GJEMNICA,

                    *Defendants.*
-------------------------------------------------------X

        Plaintiffs Felipe Reyes Martin, Jose Isabel Reyes, Edgar Osvaldo Vasquez Colop, and

Inocente Francisco Guinea Garcia, individually and on behalf of others similarly situated

(collectively, "Plaintiffs"), by and through their attorneys, CSM Legal, P.C., upon their knowledge

and belief, and as against 212 One Way Construction LLC (d/b/a One Way Construction LLC),

Way One Construction LLC (d/b/a One Way Construction LLC), ("Defendant Corporations"),

Argetim Kerkuti A/K/A Charlie, and Bekim Gjemnica, ("Individual Defendants"), (collectively,

"Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants 212 One Way Construction LLC (d/b/a One Way Construction LLC), Way One Construction LLC (d/b/a One Way Construction LLC), Argetim Kerkuti A/K/A Charlie, and Bekim Gjemnica.

2.       Defendants own, operate, or control a construction company, located at 302 Hunter Ave, Staten Island, NY 10306 under the name "One Way Construction."

3.      Upon information and belief, individual Defendants Argetim Kerkuti A/K/A Charlie and Bekim Gjemnica, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the construction corporation as a joint or unified enterprise.

4.      Plaintiffs were employed as roof mechanics at the construction corporation located at 302 Hunter Ave, Staten Island, NY 10306.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate overtime compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Furthermore, Defendants failed to pay Plaintiffs wages on a timely basis.

8.      In this regard, Defendants have failed to provide timely wages to Plaintiffs Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the overtime compensation required by federal and state law and regulations.

10.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees, and costs.

11.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a construction company located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

14.     Plaintiff Felipe Reyes Martin ("Plaintiff Felipe Reyes" or "Mr. Felipe Reyes") is an adult individual residing in Kings County, New Jersey.

15.     Plaintiff Felipe Reyes was employed by Defendants at One Way Construction LLC from approximately April 2021 until on or about May 16, 2022.

16.     Plaintiff Jose Isabel Reyes ("Plaintiff Jose Reyes" or "Mr. Jose Reyes") is an adult individual residing in Kings County, New York.

17.     Plaintiff Jose Reyes was employed by Defendants at One Way Construction LLC from approximately April 2021 until on or about March 2022.

18.     Plaintiff Edgar Osvaldo Vasquez Colop ("Plaintiff Vasquez" or "Mr. Vasquez") is an adult individual residing in Kings County, New York.

19.     Plaintiff Vasquez was employed by Defendants at One Way Construction LLC from approximately August 2021 until on or about January 2022.

20.     Plaintiff Inocente Francisco Guinea Garcia ("Plaintiff Guinea" or "Mr. Guinea") is an adult individual residing in Kings County, New York.

21.     Plaintiff Guinea was employed by Defendants at One Way Construction LLC from approximately April 2021 until on or about March 2022.

*Defendants*

22.     At all relevant times, Defendants own, operate, or control a construction company, located at 302 Hunter Ave, Staten Island, NY 10306 under the name "One Way Construction"

23.     Upon information and belief, 212 One Way Construction LLC (d/b/a One Way Construction LLC) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 302 Hunter Ave, Staten Island, NY 10306.

24.     Upon information and belief, Way One Construction LLC (d/b/a One Way Construction LLC) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 302 Hunter Ave, Staten Island, NY 10306.

25.     Defendant Argetim Kerkuti A/K/A Charlie is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Argetim Kerkuti A/K/A Charlie is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Argetim Kerkuti A/K/A Charlie possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

26.     Defendant Bekim Gjemnica is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Bekim Gjemnica is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Bekim Gjemnica possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

27.     Defendants operate a construction company located in a neighborhood on Staten Island.

28.     Individual Defendants, Argetim Kerkuti A/K/A Charlie and Bekim Gjemnica, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

29.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

30.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

31.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

32.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

33.     Upon information and belief, Individual Defendants Argetim Kerkuti A/K/A Charlie and Bekim Gjemnica operate Defendant Corporations as either alter egos of themselves and/or failed to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

  a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

  b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintain appropriate corporate records,

  c)  transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f) intermingling assets and debts of their own with Defendant Corporations,

g) diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

34. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

35. In each year from 2021 to 2022, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that is separately stated).

36. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the construction corporation on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

37. Plaintiffs are former employees of Defendants who were employed as roof mechanics.

38. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Felipe Reyes Martin*

39.     Plaintiff Felipe Reyes was employed by Defendants from approximately April 2021 until on or about May 16, 2022.

40.     Defendants employed Plaintiff Felipe Reyes as a roof mechanic.

41.     Plaintiff Felipe Reyes regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

42.     Plaintiff Felipe Reyes's work duties required neither discretion nor independent judgment.

43.     Throughout his employment with Defendants, Plaintiff Felipe Reyes regularly worked in excess of 40 hours per week.

44.     From approximately April 2021 until on or about September 2021, Plaintiff Felipe Reyes worked as a roof mechanic from approximately 8:00 a.m. until on or about 4:30 p.m. to 7:30 p.m., 7 days a week (typically 59.50 to 80.50 hours per week).

45.     From approximately October 2021 until on or about November 2021, Plaintiff Felipe Reyes worked as a roof mechanic from approximately 8:00 a.m. until on or about 10:00 p.m. to 1:00 a.m., 6 days a week (typically 84 to 102 hours per week).

46.     From approximately December 2021 until on or about February 2022, Plaintiff Felipe Reyes worked as a roof mechanic and assistant to the foreman from approximately 8:00 a.m. until on or about 10:00 a.m. to 1:00 a.m., 6 days a week (typically 84 to 102 hours per week).

47.     From approximately March 1, 2022, until on or about March 31, 2022, Plaintiff Felipe Reyes worked as a roof mechanic and assistant to the foreman from approximately 8:00 a.m. until on or about 4:30 p.m. to 7:30 p.m., 6 days a week (typically 51 to 69 hours per week).

48. From approximately April 2022 until on or about May 2022, Plaintiff Felipe Reyes worked as a roof mechanic from approximately 8:00 a.m. until on or about 4:30 p.m. to 7:30 p.m., 6 days a week (typically 51 to 69 hours per week).

49. Throughout his employment, Defendants paid Plaintiff Felipe Reyes his wages in a combination of checks and cash.

50. From approximately April 2021 until on or about November 2021, Defendants paid Plaintiff Felipe Reyes approximately $250 per day.

51. From approximately December 2021 until on or about March 2022, Defendants paid Plaintiff Felipe Reyes approximately $300 per day.

52. From approximately April 2022 until on or about May 2022, Defendants paid Plaintiff Felipe Reyes approximately $275 per day.

53. However, from approximately October 2021 until on or about November 2021, Defendants paid Plaintiff Felipe Reyes approximately $500 per day if he worked more than 12 hours a day.

54. For approximately 36 hours of work, Defendants did not pay Plaintiff Felipe Reyes any wages for additional hours worked.

55. Plaintiff Felipe Reyes's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

56. For example, Defendants required Plaintiff Felipe Reyes to work an additional 2 to 3 hours extra his scheduled departure time often and did not pay him for the additional time he worked.

57. While Plaintiff Felipe Reyes was required to keep track of his time, to his knowledge, the time tracking sheets used by Defendants did not accurately reflect his actual hours worked, despite often complaining about them.

58.     In addition, and upon information and belief, in order to get paid, Plaintiff Felipe Reyes was required to sign a document in which Defendants misrepresented the hours that he worked per week.

59.     Defendants took improper and illegal deductions of Plaintiff Felipe Reyes' wages; specifically, Defendants deducted a week worth from Plaintiff Felipe Reyes' weekly wage as punishment for allegedly doing a job incorrectly.

60.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Felipe Reyes regarding overtime and wages under the FLSA and NYLL.

61.     Defendants did not provide Plaintiff Felipe Reyes an accurate statement of wages, as required by NYLL 195(3).

62.     Defendants did not give any notice to Plaintiff Felipe Reyes, in English and in Spanish (Plaintiff Felipe Reyes' primary language), of his rate of pay, employer's regular payday, and such other information as required by NYLL §195(1).

63.     Defendants required Plaintiff Felipe Reyes to purchase "tools of the trade" with his own funds—including uniforms and tools.

*Plaintiff Jose Isabel Reyes*

64.     Plaintiff Jose Reyes was employed by Defendants from approximately April 2021 until on or about March 2022.

65.     Defendants employed Plaintiff Jose Reyes as a roof mechanic.

66.     Plaintiff Jose Reyes regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

67.     Plaintiff Jose Reyes' work duties required neither discretion nor independent judgment.

68.     Throughout his employment with Defendants, Plaintiff Jose Reyes regularly worked in excess of 40 hours per week.

69.     From approximately April 2021 until on or about August 2021, Plaintiff Jose Reyes worked from approximately 7:30 a.m. until on or about 3:30 p.m. to 6:30 p.m., 7 days a week (typically 56 to 77 hours per week).

70.     From approximately October 2021 until on or about February 2022, Plaintiff Jose Reyes regularly worked from approximately 8:00 a.m. until on or about 4:30 p.m. Mondays through Saturdays. Additionally, Plaintiff Jose Reyes worked double shifts 3 to 4 days a week from 8:00 a.m. to 11:00 p.m., (for a total of approximately 51 to 102 hours per week).

71.     From approximately March 2022 until on or about May 16, 2022, Plaintiff Jose Reyes worked from approximately 7:00 a.m. until on or about 3:00 p.m. to 6:00 p.m., Mondays through Fridays (typically 40 to 55 hours per week).

72.     Throughout his employment, Defendants paid Plaintiff Jose Reyes his wages by check.

73.     From approximately April 2021 until on or about August 2021, Defendants paid Plaintiff Jose Reyes a fixed salary of approximately $250 per day.

74.     From approximately October 2021 until on or about November 2021, Defendants paid Plaintiff Jose Reyes a fixed salary of approximately $250 per shift. Whenever Plaintiff Jose Reyes worked a double shift (over 12 hours per day), he would receive approximately $500 that day.

75.     From approximately December 2021 until on or about April 2022, Defendants paid Plaintiff Jose Reyes approximately $32.00 per hour.

76.     Defendants did not pay Plaintiff Jose Reyes any wages for approximately 83 hours of work accumulated throughout employment.

77.    Plaintiff Jose Reyes' pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

78.    For example, Defendants required Plaintiff Jose Reyes to work an additional 2 to 3 hours after his scheduled departure time often and did not pay him for the additional time he worked.

79.    While Plaintiff Jose Reyes was required to keep track of his time, to his knowledge, the time tracking sheets used by Defendants did not accurately reflect his actual hours worked, despite often complaining about them.

80.    On a number of occasions, Defendants required Plaintiff Jose Reyes to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

81.    On a number of occasions, Defendants required Plaintiff Jose Reyes to sign a document, the contents of which he was not allowed to review in detail.

82.    In addition, in order to get paid, Plaintiff Jose Reyes was required to sign a document in which Defendants misrepresented the hours that he worked per week.

83.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Jose Reyes regarding overtime and wages under the FLSA and NYLL.

84.    Defendants did not provide Plaintiff Jose Reyes an accurate statement of wages, as required by NYLL 195(3).

85.    Defendants did not give any notice to Plaintiff Jose Reyes, in English and in Spanish (Plaintiff Jose Reyes' primary language), of his rate of pay, employer's regular payday, and such other information as required by NYLL §195(1).

86.    Defendants required Plaintiff Jose Reyes to purchase "tools of the trade" with his own funds—including a helmet, uniforms, and tools.

*Plaintiff Edgar Osvaldo Vasquez Colop*

87.     Plaintiff Vasquez was employed by Defendants from approximately August 2021 until on or about January 2022.

88.     Defendants employed Plaintiff Vasquez as a roof mechanic.

89.     Plaintiff Vasquez regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

90.     Plaintiff Vasquez's work duties required neither discretion nor independent judgment.

91.     Throughout his employment with Defendants, Plaintiff Vasquez regularly worked in excess of 40 hours per week.

92.     From approximately August 2021 until on or about September 2021, Plaintiff Vasquez worked from approximately 7:30 a.m. until on or about 4:30 p.m., 7 days a week, and worked double shifts from approximately 4:30 p.m. until on or about 11:30 p.m. to 12:00 a.m., 5 to 6 days a week (typically 63 to 108 hours per week).

93.     From approximately October 2021 until on or about January 2022, Plaintiff Vasquez worked from approximately 8:00 a.m. until on or about 4:30 p.m., Mondays through Saturdays, and occasionally on Sundays, and also worked double shifts almost every day, from approximately 4:30 p.m. until on or about 11:30 p.m. to 12:00 a.m., 6 to 7 days a week (typically 51 to 96 hours per week).

94.     Throughout his employment, Defendants paid Plaintiff Vasquez his wages by check.

95.     From approximately August 2021 until on or about August 2021, Defendants paid Plaintiff Vasquez a fixed salary of approximately $200 per day.

96.     From approximately September 2021 until on or about September 2021, Defendants paid Plaintiff Vasquez a fixed salary of approximately $280 per day.

97.     From approximately October 2021 until on or about January 2022, Defendants paid Plaintiff Vasquez a fixed salary of approximately $300 per day.

98.     Plaintiff Vasquez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

99.     For example, Defendants required Plaintiff Vasquez to work an additional 2 to 3 hours past his scheduled departure time frequently and did not pay him for the additional time he worked.

100.    While Plaintiff Vasquez was required to keep track of his time, to his knowledge, the time tracking sheets used by Defendants did not accurately reflect his actual hours worked, despite often complaining about them.

101.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Vasquez regarding overtime and wages under the FLSA and NYLL.

102.    Defendants did not provide Plaintiff Vasquez an accurate statement of wages, as required by NYLL 195(3).

103.    Defendants did not give any notice to Plaintiff Vasquez, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular payday, and such other information as required by NYLL §195(1).

104.    Defendants required Plaintiff Vasquez to purchase "tools of the trade" with his own funds—including a helmet, construction boots, and tools.

*Plaintiff Inocente Francisco Guinea Garcia*

- 14 -

105.    Plaintiff Guinea was employed by Defendants from approximately April 2021 until on or about March 2022.

106.    Defendants employed Plaintiff Guinea as a roof mechanic.

107.    Plaintiff Guinea regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

108.    Plaintiff Guinea's work duties required neither discretion nor independent judgment.

109.    Throughout his employment with Defendants, Plaintiff Guinea regularly worked in excess of 40 hours per week.

110.    From approximately April 2021 until on or about May 2021, Plaintiff Guinea worked from approximately 7:30 a.m. until on or about 4:30 a.m. to 7:30 p.m., 7 days a week (typically 63 to 84 hours per week).

111.    From approximately June 2021 until on or about August 2021, Plaintiff Guinea worked from approximately 5:00 p.m. to 5:30 p.m. until on or about 11:30 p.m. to 12:00 a.m., 4 days a week (typically 21 to 28 hours per week).

112.    From approximately September 2021 until on or about February 2022, Plaintiff Guinea worked from approximately 8:00 a.m. until on or about 4:30 p.m., Mondays to Saturdays, and would work double shifts from approximately 4:30 p.m. until on or about 10:00 pm. to 1:00 a.m., 4 days a week (typically 51 to 102 hours per week).

113.    For approximately March 2022, Plaintiff Guinea worked from approximately 7:00 a.m. until on or about 4:30 p.m., Mondays to Saturdays, and from approximately 7:00 a.m. until on or about 8:00 p.m. to 11:00 p.m., 3 to 4 days a week (typically 57 to 85 hours per week).

114.    From approximately April 2021 until on or about November 2021, Defendants paid Plaintiff Guinea his wages in cash.

115.    From approximately December 2021 until on or about March 2022, Defendants paid Plaintiff Guinea his wages by check.

116.    From approximately April 2021 until on or about March 2022, Defendants paid Plaintiff Guinea a fixed salary of approximately $250 per shift. When Plaintiff Guinea worked a double shift, he received a fixed salary or approximately $500 for the entire day.

117.    Plaintiff Guinea's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

118.    For example, Defendants required Plaintiff Guinea to work an additional 2 to 3 hours past his scheduled departure time, 3 to 4 days a week, and did not pay him for the additional time he worked.

119.    While Plaintiff Guinea was required to keep track of his time, to his knowledge, the time tracking sheets used by the Defendants did not accurately reflect his actual hours worked, despite often complaining about them.

120.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Guinea regarding overtime and wages under the FLSA and NYLL.

121.    Defendants did not provide Plaintiff Guinea with an accurate statement of wages, as required by NYLL 195(3).

122.    Defendants did not give any notice to Plaintiff Guinea, in English and in Spanish (Plaintiff Guinea's primary language), of his rate of pay, employer's regular payday, and such other information as required by NYLL §195(1).

123.    Defendants required Plaintiff Guinea to purchase "tools of the trade" with his own funds—including a helmet and tools.

*Defendants' General Employment Practices*

124.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate overtime compensation as required by federal and state laws.

125.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

126.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

127.     Defendants' time keeping system did not reflect the actual hours that Plaintiff Reyes worked.

128.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

129.     On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail. Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked.

130.     Defendants paid Plaintiffs their wages in a combination of cash and check.

131.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

132.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

133.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

134.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

135.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

136.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular payday designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

137.    Plaintiffs bring their FLSA overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly

situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

138.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA and willfully failing to keep records under the FLSA.

139.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

140.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

141.    At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

142.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

143.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203 (r-s).

144.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

145.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

146.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

147.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

148.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

149.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

150.     Plaintiffs were damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

151.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

152.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

153.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

154.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

155.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

156.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

**RECOVERY OF EQUIPMENT COSTS**

157.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

158.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

159.     Plaintiffs were damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**

**UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION**

**OF THE NEW YORK LABOR LAW**

160.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

161.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

162.     Defendants made unlawful deductions from Plaintiffs' wages; specifically, Defendants deducted 36 hours from Plaintiff Reyes' weekly wages for 30 hours worked with Gisele Construction and 6 hours as punishment for doing a job wrong.

163.     The deductions made from Plaintiffs' wages were not authorized or required by law.

164.     Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE TIMELY PAYMENT PROVISIONS**

## OF THE NEW YORK LABOR LAW

165.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

166.    Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

167.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(d)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(e)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid overtime compensation and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)      Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)      Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(i)      Awarding Plaintiff liquated damages in an amount equal to one hundred percent (100%) of the total amount of wages shown to be untimely, as well as reasonable attorneys' fees and costs, and pre-judgment and post-judgment interests pursuant to NYLL §191(1)(a), 198;

(j)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(k)      Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(l)      Awarding Plaintiffs damages for the amount of unpaid overtime compensation, and for any improper deductions or credits taken against wages as applicable

(m)      Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)      Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(p)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(q)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

December 30, 2022

CSM Legal, P.C

By:  _____/s/ Catalina Sojo, Esq._____
Catalina Sojo [CS-5779517]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# CSM Legal, P.C.
Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

July 5, 2022

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Felipe Reyes

Legal Representative / Abogado:         CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                           5 de julio 2022

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.

Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

July 5, 2022

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Jose Reyes

Legal Representative / Abogado:          CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                            5 de julio 2022

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.

## Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

July 15, 2022

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Edgar Vasquez

Legal Representative / Abogado:        CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                          15 de julio 2022

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

July 27, 2022

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                         Inocente Francisco Guinea Garcia

Legal Representative / Abogado:        CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                          27 de julio 2022

*Certified as a minority-owned business in the State of New York*